### In re READING TUBE INDUSTRIES and Lash Holdings Limited jointly administered, Debtors.

Bankruptcy Nos. 87–00429 T, 87–00430 T.

United States Bankruptcy Court, E.D. Pennsylvania.

April 7, 1987.

Samuel H. Becker, Blank, Rome, Comiskey & McCauley, Philadelphia, Pa., for U.G.I.

Neal D. Colton, Dechert, Price & Rhoads, Philadelphia, Pa., for Chazen Metal Corp.

Rhoda Firestone, Bruce Frankel, Angel & Frankel, P.C., New York City, for debtor Reading Tube.

John F. Gough, Abrahams & Lowenstein, Philadelphia, Pa., for Thomas Beard et al.

John A. Hamburger, John W. Butler, Butzel, Keidan, Simon, Myers & Graham, Bloomfield Hills, Mich., Eric Brossman, McNees, Wallace & Nutrick, Harrisburg, Pa., for Heller Finance and National Acceptance Corp.

Barry D. Kleban, Adelman, Lavine, Krasny, Gold & Levin, Philadelphia, Pa., for Cerro Copper.

John T. Howell, National Acceptance Co. of America, Chicago, Ill., for National Acceptance Corp.

Roger W. Kapp, Donovan, Leisure, Newton & Irvin, New York City, Robert W. Laposky, Rubin, Quinn & Moss, Philadelphia, Pa., for debtor.

Charles J. Phillips, Mogel, Speidel, Bobb & Kershner, Reading, Pa., for Creditors Committee.

Lynne Gerber Saionz, Philadelphia, Pa., for Union.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

The debtors, Reading Tube Corporation and Lash Holdings Limited have filed a

motion for authorization to borrow funds pursuant to 11 U.S.C. § 364(d), including the "priming" of certain liens now held by the long term secured lenders. Meridian Bank, on its own behalf, and as a servicing agent for Farmers Home Administration, and the United States Department of Agriculture (hereinafter collectively "bank") filed an objection to the debtor's motion, averring that the debtor has not provided adequate protection to the bank.[1] We will deny the debtor's motion in light of the debtor's utter failure to comply with the requirements of Section 364(d)(1) of the Bankruptcy Code.

In November of 1982, J. Lash Acquisition Corp., predecessor in interest to Reading Tube Corporation, assumed certain liabilities of Reading Industries, Inc. to the bank, under an Assumption Agreement, and in connection therewith executed several notes and loan security agreements ("loan documents"). Under the loan documents, the debtor is indebted to the bank and the Economic Development Administration ("long term lenders") in the approximate amount of $14,000,000. Such indebtedness is secured by, *inter alia*, first liens on the debtor's real estate; a first lien on debtor's machinery and equipment; and a lien on the remainder of all of the debtor's assets, primarily on accounts receivable and inventory, second only to the loans being made by Heller Financial to the debtor on a formula basis.

On January 29, 1987, Reading Tube Corporation and Lash Holdings Limited ("debtor") filed for relief under Chapter 11 of the Bankruptcy Code. Contemporaneously, the debtor filed the instant motion for authorization to borrow funds. We signed an interim consent order on February 6, 1987, pending further notice and final hearing on March 16, 1987.

In this motion, the debtor and National Acceptance Company of America ("NAC") seek court approval of a post-petition loan and security agreement ("financing agreement") entered into by the debtor and NAC. Under the financing agreement, NAC proposes to lend monies to the debtor under five different loan facilities, of which loans (i) will be secured by a lien on and a security interest in all of the debtor's assets, senior to all existing liens and security interests, including without limitation, the bank's first lien on machinery, equipment and certain real estate of the debtor and (ii) shall have an administrative priority over all administrative expenses under Section 364 of the Bankruptcy Code.

Under the financing agreement, NAC has total discretion to: (1) decide whether to lend monies at any particular time; (2) to terminate the loans without cause at any time; and (3) to accelerate at any time, without notice, all of the debtor's pre-petition and post-petition liabilities, to be immediately due and payable to NAC. The financing agreement also provides for an accomodation loan, whereby certain equity holders shall participate in the loans to the debtor, and obtain an insider superpriority lien (with NAC) ahead of the bank's lien.

The bank bases its objection upon the contention that the debtor has not established that the financing agreement provides the bank with adequate protection for its interest.

Section 364(d)(1) of the Bankruptcy Code permits the court to authorize a debtor-in-possession to obtain credit secured by a lien, senior or equal to a lien on property of the estate if: (1) such credit can not otherwise be obtained; *and* (2) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.[2] The debtor must satisfy

---

**1.** Through Counsel, Thomas Beard et al. have also filed an objection to the debtor's motion for authorization to borrow funds.

**2.** 11 U.S.C. § 364(d) provides:

(d)(1) The court, after notice and hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal

lien on property of the estate that is subject to a lien only if—

(A) the trustee is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

both prongs of the two-prong test set forth in Section 364(d)(1) before the court will authorize the type of funding contemplated.

■ The first prong requires the debtor to demonstrate that less onerous post-petition financing was unavailable. *See, i.e., In re Beker Industries Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y.1986); *In re Phoenix Steel Corp.*, 39 B.R. 218, 222 and n. 9 (D.Del.1984). The debtor contends that the statute fails to explicitly provide how extensive the debtor's efforts to obtain credit must be; therefore, the court must make its decisions on a case by case basis. We agree. The debtor cites *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir.1986), for its proposition that "there is no duty to seek credit from every possible lender." Again, we agree. Given the "time is of the essence" nature of this type of financing, we would not require this or any debtor to contact a seemingly infinite number of possible lenders. We do, however, require the debtor *to make an effort* to carry the burden established in Section 364(d).

■ The court in *Snowshoe* stated, "The record *clearly indicates* that the trustee contacted other *institutions* in the immediate geographic area and was unsuccessful." *Snowshoe*, supra at 1088. (emphasis added) In *In re Beker*, the court held that the debtor's efforts were sufficient to carry its burden under Section 364(d)(1)(A) where the debtor's voluminous testimony indicated that it had approached 35 to 40 lenders to obtain replacement financing prior to filing its Chapter 11 petition, and approximately 20 lenders after it filed its Chapter 11 petition. *Beker* 58 B.R. at 729. Further, Judge David Scholl of this district, in *In re Crouse*, 71 B.R. 544, 550, (Bankr.E.D.Pa.1987), held, "... we are not convinced that the debtors have made the requisite exhaustive unsuccessful efforts to obtain credit on terms in accordance with Section 364(b). Only *one* lending institution was approached." at 550. (emphasis added) While we recognize that *Crouse* was decided under a different subsection of Section 364 than the issue at hand, we note that Section 364(d) carries a much heavier burden than 364(b) since subsection (d) contemplates the priming of liens. The aforementioned cases, taken as a whole, indicate that not every available lending institution need be contacted in order *for* the debtor to carry its burden. Courts have found 20 attempts and 2 attempts [3] to be sufficient under the particular circumstances of each case but pursuant to *Crouse*, one attempt is not sufficient. The debtor, in the case at hand, has failed to demonstrate that they have approached even one institution [4] to request financing. N.T. at 8 (2/5/87) The debtor chose, for whatever reason, to rely solely upon the *opinion* of its Chairman of the Board, James Lash, to demonstrate the unavailability of other financing. While we recognize the extensive financing experience and business acumen of the Chairman, we do not find that his opinion alone, without some demonstrated effort to approach other potential lenders, meets the requirements contemplated in Section 364(d)(1)(A). The debtor also argues that the objectors have not shown that financing could be secured on less onerous terms. However, no provision of the Code, and specifically of Section 364(d), requires the bank to prove availability of credit. The burden is clearly upon the debtor. The debtor has been given every opportunity to show even minimal effort in seeking credit. It has chosen not to do so and its failure compels this court to deny the debtor's motion pursuant to Section 364(d)(1)(A).

The second prong of the Section 364(d) test requires the debtor to prove "adequate protection of the interest of the holder of the lien on the property of the estate by

---

(2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

**3.** This court's reasoning rests upon its own interpretation of the language of *Snowshoe* where the record does not reveal the actual number of attempts made but employs the word *institutions* which would logically mean 2 or more.

**4.** Other than NAC.

which such senior or equal lien is proposed to be granted." *See* Section 364(d)(1)(B).

■ The concept of "adequate protection" is defined in the Bankruptcy Code only by way of examples as set forth in Section 361. This section provides in pertinent part:

§ 361. Adequate protection. When adequate protection is required under section ... 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash or periodic cash payments to such entity to the extent that ... any grant of a lien under section 364 of this title results in the decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; *or*

(3) granting *such other relief,* other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property. 11 U.S.C. § 361 (emphasis supplied)

Section 361(3) affords the parties and the courts some degree of "... flexibility by allowing *such other relief* as will result in the realization by the protected entity of the *value* of its interest in the property involved." *See* House Report No. 95–595, 95th Cong., 1st Sess. (1978), U.S.Cong. and Admin. News, 1978, Pages 5787, 6296. The absence of a definition of adequate protection in the Code coupled with the "flexibility" of Section 361(3) suggests that adequate protection may be shown in a variety of ways. A debtor may demonstrate adequate protection by proving the existence of, *inter alia:* (1) an equity cushion, *See e.g. In re St. Petersburg Hotel Associates, Ltd.,* 44 B.R. 944 (Bankr.M.D.Fla.1984); *In re Phoenix Steel Corporation,* 39 B.R. 218 (D.Del.1984); *In re Antinello,* 38 B.R. 609 (Bankr. E.D.Pa.1984); (2) a third party guaranty, *See e.g. In re Harrow Leasing Corp.,* 35 B.R. 916 (Bankr.E.D.Pa.1983); or (3) substitute collateral, *See, e.g. Phoenix,* 39 B.R. at 233.

■ The debtor, in the case at hand, does not allege that an equity cushion exists. The debtor has not offered the protection of a third party guaranty in this matter. The debtor has, however, provided the objectors with a replacement lien on the debtor's net current assets in order to protect against the diminution in value of the bank's interest. In order for the court to find that the debtor's proposed replacement lien affords adequate protection, the debtor must prove that the value of the replacement lien is greater or equal to the difference between the value of the bank's liens on debtor's property and the value of the liens after being primed. We find that the debtor did not present sufficient evidence to place a value on the bank's present interest in debtor's property; nor did debtor present sufficient evidence to place a value on the proposed second lien on net current assets.

The debtor relied solely upon its own personal projections to demonstrate the existence of adequate protection. Debtor cites the *Beker* case, supra, for the proposition that projections should be given weight by the court when deciding the issue of adequate protection. We find *Beker* inapposite for two reasons. First, the projections in *Beker* were considered in determining whether or not a company would liquidate and such projections were relevant to the issue of the type of valuation of debtor's assets and not, as the debtor here proposes, to prove the existence of adequate protection in a Section 364(d) context. Second, the *Beker* projections were provided by independent consultants and experts for all of the parties. The debtor, in the case at bar, relies solely upon the projections of Mr. James Lash, Chairman of the Board of Directors of the debtor. The debtor offered no additional evidence on this issue. The debtor also relies on the *Snowshoe* decision, supra, for the proposition that projections can be used to prove adequate protection. The projections in *Snowshoe,* however, were offered as *additional support* rather than the only evi-

334

dence to demonstrate the existence of adequate protection. The economic forecasts made in *Snowshoe* were those of a trustee and not those of a party in interest. This court gave much consideration to the testimony of Mr. Lash and although we found it to be both informative and credible, we do not feel that, by itself, it meets the standards required under 11 U.S.C. § 364(d).

The debtor had two burdens to carry before this court could authorize the use of a superpriority loan under Section 364(d). First, the debtor had to prove there was no other available financing. Second, the debtor had to demonstrate the existence of adequate protection. In both instances, the debtor would have us rely solely upon the testimony of Mr. Lash. Section 364(d) requires a debtor to put forth more effort than has been shown here. The debtor falls short of the required level of proof.

For all of the aforementioned reasons, we will sustain the objection of the bank and will deny the debtor's motion filed pursuant to 11 U.S.C. § 364(d), for authorization to borrow funds from the first secured creditor with priority over administrative expenses and secured by a lien on property of the estate, and for adequate protection.

An appropriate order will follow.