**In re PLABELL RUBBER PRODUCTS, INC., Debtor.**

**Bankruptcy No. 91–34578.**

United States Bankruptcy Court, N.D. Ohio, W.D.

Feb. 13, 1992.

Thomas J. Schank, Toledo, Ohio, for debtor.

Verne C. Armstrong, Toledo, Ohio.

Ruth A. Meacham, Toledo, Ohio, for Bank.

Jeffrey Julius, Toledo, Ohio, for Teamsters Local Union No. 20.

Kenneth C. Baker, Toledo, Ohio, for Mr. White.

Henry Riordan, U.S. Dept. of Justice, Washington, D.C., for U.S. Dept. of Justice.

Amy Leizman, Office of U.S. Trustee, Cleveland, Ohio, U.S. Trustee.

## OPINION AND ORDER DENYING MOTION FOR AUTHORITY TO OBTAIN CREDIT SECURED BY A SENIOR LIEN

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on for hearing upon Debtor's motion for authority to obtain credit secured by a senior lien pursuant to 11 U.S.C. § 364(d) to which objections were filed by Harry White and the United States of America. Upon consideration of the evidence adduced at the hearing, and the oral arguments of the parties, the court finds that said motion should be denied.

### FACTS

On November 22, 1991, Debtor filed its chapter 11 petition. On November 25, 1991, Debtor filed an emergency motion for authority to use cash collateral, pay wages claims and request for immediate preliminary hearing. The motion reflected that Fifth Third Bank (hereinafter the bank) held a security interest in all of Debtor's accounts, inventory, real estate and general

intangibles; the bank claims a debt due it, as of the date of Debtor's petition, in the amount of $947,456. The IRS also claimed an interest in the property by virtue of duly recorded tax liens and has filed a proof of claim in the amount of $283,-208.61. As a result of a hearing held upon said motion, an order was entered on November 26, 1991, authorizing Debtor to use cash collateral up to a maximum of $125,-000. The terms of that order included that adequate protection would be provided to the Internal Revenue Service and the bank by extending a replacement postpetition lien to the same extent and priority as existed prepetition upon all cash collateral. Additionally, Mr. Harry E. White, president and sole shareholder of WIS, Inc., the sole shareholder of the Debtor, agreed to provide additional adequate protection by granting a lien upon six unencumbered residential lots, appraised at $175,000.

On December 5, 1991, Debtor moved to increase the cap of $125,000 previously placed on Debtor's use of cash collateral to $275,000 for total use of cash collateral. On December 9, 1991, as a result of an emergency motion, the court permitted Debtor's use of cash collateral up to an additional $42,000. On December 19, 1991, a second order permitting the use of cash collateral up to the amount of $275,000 was entered providing that Mr. Harry E. White should no longer be employed by, or receive compensation from, Debtor; that sales and purchases should be in accordance with a fixed budget; and that the replacement liens granted the IRS and the bank, in the November 26, 1991 order for use of cash collateral, shall be continued.

On January 27, 1992, Debtor filed the instant motion for authority to obtain credit secured by a senior lien, pursuant to 11 U.S.C. § 364, stating that the bank had been its primary lender for operating loans and that although it met projections required by the December 19, 1991 order, it foresaw the need for additional funds to remain viable. The bank and Debtor, in order to meet this need, negotiated the terms of a postpetition financing arrangement, the terms of which include a postpetition lien for any advances made in an

amount equal to 2.25 times the outstanding balance of any advances, which lien would be senior and prior to the prepetition and postpetition liens recorded against Debtor's assets, pursuant to 11 U.S.C. § 364(d)(1). Furthermore, Debtor and the bank agreed that the bank's postpetition financing arrangements would have the highest priority as expenses of administration, pursuant to §§ 503, 507 and 364.

Mr. White opposes Debtor's motion stating that the proposed financing is not necessary for Debtor's continued business operations; that the 2.25 factor, permitting a postpetition lien, is impermissible; and that the prior cash collateral orders permitting replacement liens to the bank and the IRS may be jeopardized by the granting of a § 364(d) lien to the bank. The IRS also objected to Debtor's motion stating that it holds a secured claim against all property of Debtor; that as a result of Debtor's inability to maintain a balance of cash collateral, Debtor has defaulted under the terms of the December 19, 1991 order, and termination of the use of cash collateral is necessary; that Debtor has failed to demonstrate under § 364, its inability to obtain credit otherwise than by the granting of a superpriority lien, or that IRS is adequately protected.

At the hearing, Debtor's counsel orally amended its motion, requesting authorization to obtain $35,000 from the bank, granting the bank a lien in the amount of 2.25 times any outstanding advances, reviewable in 60 days. That is, if the bank were dissatisfied with Debtor's performance within the 60 day period, no further extensions of credit would be given. Mr. Larry Friedeman, vice president and CEO of Debtor corporation, testified that after it became apparent that Debtor needed additional funds with which to continue operating, he contacted the bank requesting $70,-000. After serious negotiations between Mr. Friedeman and personnel at the bank, spanning two days, the bank agreed to lend Debtor $35,000 if it were granted a senior superpriority lien in an amount of 2.25 times the outstanding amount advanced; the original factor offered to Debtor was

3.33. The negotiated terms also required Debtor to institute, within 30 days, appropriate adversary proceedings to recover property of Debtor presently in the possession and control of companies related by common ownership to the Debtor. Mr. Gregory Kosch, employed in the commercial lending department of the bank, corroborated Mr. Friedeman's testimony concerning the discussions between Debtor and the bank.

Mr. Friedeman also stated that he had a breakfast meeting with a branch manager of National Bank of Detroit at which time he discussed Debtor's financial needs and NBD's position regarding extension of credit. The branch manager informed Mr. Friedeman that he was not authorized to make such a loan, but would pass the information on to the appropriate individual at NBD. Based upon his business experience, Mr. Friedeman was unaware of the availability of other financing arrangements, due to Debtor's present financial posture. Mr. Friedeman opined that Debtor, if not permitted to borrow the monies at issue, would cease doing business within 60 days.

Mr. Friedeman projected that the infusion of $35,000 would generate revenues of approximately three times that amount. Since entry of the December 19, 1991 cash collateral order, Mr. Friedeman stated, Debtor has increased its cash position by $80,000; however, since the date of Debtor's petition, Debtor has experienced a loss of $10,000 in its cash position.

## DISCUSSION

Debtor's motion is brought pursuant to 11 U.S.C. § 364 and by the terms of the proposed financing arrangement, is governed by subsection (d) of that section, which provides:

(d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

(A) the trustee is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

(2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

Furthermore,

Section 363(d)(1)(B) requires the movant to prove that the lender who is subject to being primed will be adequately protected in the face of the loan transaction.

\* \* \* \* \* \*

... The important question, in determination of whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.

*In Re Aqua Associates*, 123 B.R. 192, 196 (Bkrtcy.E.D.Pa.1991) (citations omitted). *See also In Re Sky Valley, Inc.*, 100 B.R. 107, 113, 21 C.B.C.2d 1 (Bkrtcy.N.D.Ga. 1988) (pursuant to § 364(d), Debtor must show (1) the Debtor is unable to obtain credit otherwise; and (2) the senior lienholder, which will be supplanted, or "primed," by the superpriority lienholder, is adequately protected).

■ Initially, the court is not persuaded that Debtor has established that it was unable to obtain credit otherwise. Mr. Friedeman testified that he had a breakfast meeting with a branch manager from NBD; although that individual told Mr. Friedeman that NBD would contact him if it was interested in extending Debtor credit, Mr. Friedeman did not contact NBD again. Mr. Friedeman also testified that based on his experience, he believed it futile to contact other financial institutions. The court is not convinced that Mr. Friedeman's assessment is accurate. Minimally, Debtor should have contacted other institutions in an effort to obtain a factor less than the 2.25 presented to the court. The court cannot find that:

it is patently clear that the credit sought to be obtained is not otherwise available. The repeated attempts to find other lenders, the intractability of the Banks and [Debtor's] having to litigate with them to obtain the use of cash collateral, the on-

erous negotiations and the Banks' unwavering insistence on a lien ... if loan proceeds were to be utilized to operate or maintain it all amply demonstrate the unavailability of the credit sought except upon [these terms]

*In Re Beker Industries Corp.,* 58 B.R. 725, 736 (Bkrtcy.S.D.N.Y.1986). *See also In Re Snowshoe Co., Inc.,* 789 F.2d 1085 (4th Cir.1986) (record clearly indicates that the trustee contacted other financial institutions in the immediate geographic area and was unsuccessful); *In Re Antico Mfg. Co., Inc.,* 31 B.R. 103, 105, 10 B.C.D. 1085 (Bkrtcy.E.D.N.Y.1983) (Debtor demonstrated that its attempts to secure other means of financing were unsuccessful). That is,

Debtor contends that the statute fails to explicitly provide how extensive the Debtor's efforts to obtain credit must be; therefore, the court must make its decisions on a case by case basis. We agree. The Debtor [argues] that "there is no duty to seek credit from every possible lender." Again, we agree. Given the "time is of the essence" nature of this type of financing, we would not require this or any Debtor to contact a seemingly infinite number of possible lenders. We do, however, require the Debtor to make an effort to carry the burden established in Section 364(d).

*In Re Reading Tube Industries,* 72 B.R. 329, 332, 15 B.C.D. 927, 16 C.B.C.2d 815 (Bkrtcy.E.D.Pa.1987) (citation omitted). Debtor's one contact is insufficient. *Id.*

■ Section 361 provides three nonexclusive methods of providing adequate protection, which provisions apply to § 364. *Sky Valley, Inc.,* 100 B.R. at 113. Debtor has the burden of proving adequate protection. 11 U.S.C. § 364(d)(2). These alternatives include requiring Debtor to make a cash payment or periodic cash payments to the extent of a decrease in the value of the property. 11 U.S.C. § 361(1). Alternatively, the Debtor may provide an additional or replacement lien to the extent of a decrease in the value of the property. 11 U.S.C. § 361(2). Lastly, adequate protection may be provided by granting other relief that will result in the indubitable equivalent of

the interest in the property. 11 U.S.C. § 361(3).

In determining adequate protection, the court must consider

the nature of the creditor's interest in the property, the potential harm to the creditor as a result of the property's decline in value and the method of protection

*Matter of Braniff Airways, Inc.,* 783 F.2d 1283, 1286 (5th Cir.1986) (citation omitted). *See also In Re Bohne,* 57 B.R. 461, 463 (Bkrtcy.D.N.D.1985) (in assessing an offer of adequate protection the court must determine the value of secured creditor's interest; the risks to that value that will result from the debtor's use of the property; and most importantly, whether the proposed adequate protection truly provides protection from that risk). That is, Debtor

does not allege that an equity cushion exists. The Debtor has not offered the protection of a third party guaranty in this matter. The Debtor has, however, provided the objectors with a replacement lien on the Debtor's net current assets in order to protect against the diminution in value of the bank's interest. In order for the court to find that the Debtor's proposed replacement lien affords adequate protection, the Debtor must prove that the value of the replacement lien is greater or equal to the difference between the value of the bank's liens on Debtor's property and the value of the liens after being primed. We find that the debtor did not present sufficient evidence to place a value on the bank's present interest in Debtor's property; nor did Debtor present sufficient evidence to place a value on the proposed second lien on net current assets.

*Reading Tube,* 72 B.R. at 333.

Conceivably, although "an increase in the value of the collateral generated by the improvements resulting from the superpriority financing could constitute adequate protection," *Sky Valley,* 100 B.R. at 114, the court is not persuaded by the testimony that such an improvement is realistic. Mr. Friedeman testified that with the $35,000 cash infusion, within the next 60 days, cash

collateral may increase, from $496,000 at the time of the hearing, to between $510,000 and $570,000, calculated by using Mr. Friedeman's figures of $60,000 to $65,000 for raw materials, $100,000 to $110,000 for finished goods and $350,000 to $400,000 for accounts receivable. If the court approved the proposed financing arrangement, the $35,000, to be adequately protected by the 2.25 factor, must result in an improvement of $78,750 ($35,000 × 2.25). This improvement would total $574,750 ($496,000 + $78,750). Again, using Debtor's highest projections do not permit Debtor to gain any ground in its fight against financial losses.

Furthermore, Debtor failed to present projections or other documentation establishing these figures. Rather, Mr. Friedeman testified from his own recollection and some hand written notes. No documentation, which may have included an accounts receivable aging table and an inventory of raw materials and finished goods, was presented to the court in support of these projections. *See Snowshoe Co.*, 789 F.2d at 1089 (predictions of any variety are never totally reliable but when they are made by a professional operating within his area of competence and supported by data, such predictions are worthy of some deference); *Reading Tube*, 72 B.R. at 333 (Debtor relied solely upon its own personal projections to demonstrate the existence of adequate protection).

Nothing tangible has been proffered to the court, justifying the subordination of IRS' interest to the bank except that Debtor was offering the six residential lots owned by Mr. White, which lots were previously provided as adequate protection to the IRS and the bank by granting a lien in the same priority and extent as their prepetition liens on cash collateral. Order for Use of Cash Collateral at 3 (November 26, 1991); Second Order Permitting the Use of Cash Collateral at 4 (December 19, 1991). However, the availability of this real estate as additional adequate protection is nebulous. If the proposed financing arrangement were approved, the IRS' position would be primed by that of the bank. Furthermore, even without being impressed

with yet another borrowing order, it is conceivable that the property may not ultimately be sufficient to satisfy the protection previously provided should there be any further erosion of the cash collateral. Thus, Debtor has failed to establish adequate protection of IRS' position.

Finally, Debtor failed to present evidence regarding a plan. Although this case was filed only three months ago, Debtor must demonstrate a plan in the making, for which the incurring of the priority debt will be beneficial. That is,

> we have adopted a holistic approach, ... the issue of adequate protection, ... is measured by 'an analysis of all of the relevant facts, with a particular focus upon the value of the collateral, the likelihood that it will depreciate or appreciate over time, the prospects for successful reorganization of the Debtor's affairs by means of the Plan, and the Debtor's performance in accordance with the Plan.'

*Aqua Associates*, 123 B.R. at 196–97 (citations omitted).

Debtor cites several cross collateralization cases in support of its position. The court finds these cases inapposite as they represent extensions of credit under § 364(c), dealing with the effect upon unsecured creditors. In the instant case, Debtor's motion effects the rights of a secured creditor, to-wit: the IRS.

Finally, considering the terms of the financing arrangement, in toto, appears to "pervert the reorganizational process from one designed to accommodate all classes of creditors and equity interests to one specially crafted for the benefit of the Bank." *In Re Tenney Village Co., Inc.*, 104 B.R. 562, 568 (Bkrtcy.D.N.H.1989).

> The Debtor had two burdens to carry before this court could authorize the use of a superpriority loan under Section 364(d). First, the Debtor had to prove there was no other available financing. Second, the Debtor had to demonstrate the existence of adequate protection.

*Reading Tube,* 72 B.R. at 334. In light of the foregoing, the Debtor having failed to meet its burden of proof, it is therefore

ORDERED that Debtor's motion for authority to obtain credit secured by a senior lien be, and it hereby is, denied.