# In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-2604

MELLON BANK, N.A., as agent for 14 prepetition senior
lenders of Qualitech Steel Corp.,

*Plaintiff-Appellant*,

v.

DICK CORPORATION and GE SUPPLY COMPANY,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. IP 02-0040-C-M/S—**Larry J. McKinney**, *Chief Judge*.

_____

SUBMITTED OCTOBER 20, 2003[1]—DECIDED DECEMBER 4, 2003

_____

Before BAUER, POSNER, and EASTERBROOK, *Circuit
Judges*.

EASTERBROOK, *Circuit Judge*. Bankruptcy law entitles
debtors' estates to recover preferential transfers, including
payments on account of antecedent debts made during the

---

[1] This appeal is successive to *In re Qualitech Steel Corp.*, 276 F.3d
245 (7th Cir. 2001), and has been submitted to the original panel
under Operating Procedure 6(b). The panel has decided that
further oral argument is unnecessary.

90 days before the commencement of the proceeding. 11 U.S.C. §547(b). Preferences are recovered "for the benefit of the estate" (11 U.S.C. §550(a)) and thus profit all creditors according to their statutory and contractual entitlements. We must decide whether the right to recover a preference is an asset of the estate that may be assigned or distributed to a particular class of creditors to satisfy their entitlements. A different way to put the same question is whether a suit on behalf of all creditors in the money is "for the benefit of the estate". Either way the issue is characterized, our answer is "yes."

The dispute arises from a complex series of transactions that can be summed up simply. When Qualitech Steel entered bankruptcy, it was in economic distress—that is to say, it had a negative operating cash flow. (Financial distress, by contrast, entails a positive cash flow that is not large enough to retire existing debts.) Qualitech's equity was worthless. Secured debts exceeded the value of its assets. Most creditors, both secured and unsecured, agreed that the best step was to sell Qualitech promptly as a going concern to someone willing to take the risk of trying to turn the business around. In order to finance its operations for the time necessary to effect a sale— Qualitech was burning through cash at a monthly rate of $10 million—a syndicate of lenders advanced some additional capital. In order to mollify the prepetition secured creditors that did not want to participate, the bankruptcy judge promised them that, if their position deteriorated during the interim, they would be entitled to dibs on as much as $30 million of Qualitech's remaining assets, including the value of any preference-recovery actions. *In re Qualitech Steel Corp.*, 276 F.3d 245 (7th Cir. 2001), held over the protest of the unsecured creditors that this promise was within the bankruptcy judge's authority, and that the judge also properly found that the secured creditors' position had in fact deteriorated, entitling them to the first $30 million of any preference-recovery actions.

The sale price was insufficient to cover both the new super-priority loans and the original secured loans. The original secured lenders' unsatisfied debts exceeded the value of any anticipated preference recoveries. Because at this point the estate was penniless, a committee of the secured lenders advanced funds to finance preference actions through Mellon Bank, which was appointed as the creditors' agent to collect on behalf of the (dissolved) debtor in possession, Qualitech. Multiple preference-recovery actions have been filed; recoveries to date exceed $10 million. But Dick Corp. and GE Supply Co. contended that they need not return the roughly $1 million in last- minute payments they received. They advanced two principal arguments: first that the entitlement to pursue avoidance actions had been sold with Qualitech's business, and second that recoveries that would flow straight to the pockets of secured creditors are not "for the benefit of the estate" as §550(a) uses that phrase. The bankruptcy judge agreed with both lines of argument and dismissed the actions. On an appeal under 28 U.S.C. §158(a), the district judge rejected the first contention but accepted the second, and thus affirmed the judgment. 2003 U.S. Dist. LEXIS 9427 (S.D. Ind. May 9, 2003). We have jurisdiction of the creditors' appeal, because the order under review is the final decision in an adversary proceeding. 28 U.S.C. §158(d).

Dick and GE (collectively the "preference recipients") ask us to affirm on the theory that the buyer of Qualitech's assets, rather than the secured creditors, owns any entitlement to recover preferential transfers. Although the district judge disagreed with this contention, and the preference recipients did not file a cross-appeal, litigants may offer on appeal any properly preserved argument that supports the judgment. See *Massachusetts Mutual Insurance Co. v. Ludwig*, 426 U.S. 479 (1976). It is enough to say, however, that we agree with the district judge's treatment of this issue, for the reasons the judge gave.

Another potential show-stopper also requires little discussion. According to 11 U.S.C. §547(b), a trustee or a debtor in possession may prosecute a preference-recovery action, and Mellon Bank is neither. See also *Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000) (enforcing similar limitation in 11 U.S.C. §506(c)). But Mellon Bank has stepped into the shoes of the dissolved Qualitech, acquiring the debtor's claim by means of the order we affirmed in *Qualitech Steel*. The Supreme Court's decision in *Hartford Underwriters* did not disturb decisions allowing a lineal descent of statutory rights. 530 U.S. at 13 n.5. Thus we need not determine whether creditors ever may pursue avoidance actions while a debtor in possession or trustee exists, and over their opposition, by a rationale along the lines of shareholders' derivative actions in corporate law. See *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 203 (7th Cir. 1988). Cf. *Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003) (en banc).

Thus we arrive at the question whether a recovery for the use of secured creditors can be "for the benefit of the estate". We say "can be" rather than "is" because, by the time Mellon Bank filed the first preference-recovery action, there was no "estate"; Qualitech is gone and its assets are in new hands. But an *ex post* inquiry misses the real benefit. The potential to recover funds from preference recipients was put to use for the estate's benefit—at a time when Qualitech still existed and had unsecured creditors—when the bankruptcy court promised this value to the objecting secured lenders to compensate them for risk while new super-secured funds were raised and the assets were sold. Instead of calling off the sale, or distributing some assets to the secured creditors, or taking some other step that (the bankruptcy judge believed at the time) would have made creditors as a whole worse off, the judge used the value of these assets to protect the secured creditors'

position and thus facilitate what appeared to be the most productive course of action. Qualitech's assets were sold, and unsecured creditors received a bonus of $7.5 million. (The record does not reveal why the secured creditors agreed to this departure from absolute priority.)

Having put the *prospect* of preference recoveries to work for the benefit of all creditors (including the unsecured creditors) *ex ante* by effectively selling them to the secured creditors in exchange for forbearance—and in the process facilitating a swift sale that was beneficial all around—the bankruptcy judge did not need to use them *ex post* a second time, for still another benefit to the estate; there was no further benefit to be had. We established in *P.A. Bergner & Co. v. Bank One, Milwaukee, N.A.*, 140 F.3d 1111, 1118 (7th Cir. 1998), that §550(a) is satisfied by an indirect benefit to the estate, and the point hardly seems arguable even as an original matter. (There are no decisions to the contrary, other than the one under review.) The estate's *ex ante* benefit is all that the statute requires. That much would be clear if the secured creditors had *purchased* for $30 million in cash (paid into Qualitech's estate before its assets were sold) the right to pursue the preference-recovery actions; it is no less clear when the incoming cash takes the form of DIP financing that is secured in part by the promise that preference-recovery actions can be used to make good any losses the secured lenders otherwise must absorb.

Lest this way of resolving the issue be taken to assume that §550(a) requires that some benefit flow to unsecured creditors, we add that the statute does not say this. Section 550(a) speaks of benefit to *the estate*—which in bankruptcy parlance denotes the set of all potentially interested parties—rather than to any particular class of creditors. What happens to recoveries that reach the estate's coffers depends on contractual and statutory entitlements. To see this, consider a business that is reorganized under judicial

supervision rather than auctioned off. Suppose this firm has $10 million in cash (including receivables) plus assets that could be sold for $90 million, and $150 million in secured debt. The security interest includes a floating lien on inventory, cash on hand, and receivables. This firm belongs to the secured creditors; unsecured creditors are not legally entitled to a dime; any influx of cash will go to the benefit of secured lenders to reduce the deficiency. Yet no one doubts that this debtor in possession (or a trustee) could bring a preference-recovery action under §547. The operating business counts as an "estate" without regard to the identity (and priority) of those who will receive distributions eventually. We cannot see any reason why a firm with the same financial attributes—that is, one in which both equity investors and unsecured creditors will be wiped out—can bring avoidance actions if the business is reorganized under the supervision of the senior lenders, but not if these lenders and the judge decide to sell the business as a going concern to a third party. Such a sale does not injure preference recipients (or unsecured creditors), so there is no reason why it should entitle the preference recipients to keep the money.

A legal rule that the quick sale of a business precludes avoidance actions by eliminating any benefit to the estate would derail many beneficial sales (because selling the business would reduce its value by abandoning opportunities to recover last-minute payouts). Likewise it would encourage the managers to make preferential transfers to favored vendors (who would not need to repay the firm). Neither of these consequences would be desirable. Our prior opinion establishes that using the prospect of avoidance actions as additional collateral promoted an efficient disposition of Qualitech's business (or so, at least, the bankruptcy judge was entitled to conclude at the time the financing was secured). That would not have been possible

if, as the preference recipients argue here, the transaction vaporized the collateral sought to be used. Our reading of the Bankruptcy Code avoids these problems and enables the judge and the creditors to choose between in-court reorganization and immediate sale by reference to their economic benefits rather than legal artifacts.

REVERSED AND REMANDED


A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*