### In re ENCORE HEALTHCARE ASSOCIATES, Debtor.

### No. 04–11025DWS.

United States Bankruptcy Court, E.D. Pennsylvania.

June 18, 2004.

Peter E. Meltzer, Meltzer and Associates, P.C., Philadelphia, PA, for Encore Healthcare Associates.

Dave P. Adams, United States Department of Justice, Philadelphia, PA, for United States Trustee.

### *MEMORANDUM OPINION*

DIANE WEISS SIGMUND, Chief Judge.

Before the Court is the Motion for an Order under 11 U.S.C. §§ 105(a), 363 and Fed.Bankr.R. 2002, 6004, 6008 and 9014(A) Approving Auction and Notice Procedures, (B) Authorizing the Sale of Substantially All of Debtor's Assets Free and Clear of Liens, Claims and Encumbrances and (C) Granting Related Relief (the "Motion"). A hearing was held on May 18, 2004 at which the Debtor requested an Order approving

the auction and notice procedures, *i.e.*, the relief set forth in part (A) of the Motion. Greenleaf VI, Inc. ("Greenleaf") filed an Objection to the Motion but advised me at the hearing that it had negotiated a resolution and was supporting the sale on the terms of a proposed Order yet to be finalized.[1] No other objections to the Motion were filed. However, for the reasons set forth below, the Court raised *sua sponte* a question regarding the permissibility of the contemplated sale and directed the Debtor to file a memorandum in support of the Motion by May 28, 2004. On May 28, 2004, the memorandum was filed, and the matter is ripe for resolution.

### BACKGROUND

 The following facts were elicited from the case file.[2] On January 23, 2004 Encore Health Associates ("Debtor") filed a petition under Chapter 11. Until the Motion was filed there was no activity in this case other than the conduct of the § 341 hearing on March 3, 2004. The first and only operating report for the period January 23, 2004 to February 28, 2004 was filed on May 18, 2004.

The Debtor's sole asset is a facility located at 2630 Woodland Road, Roslyn, Pennsylvania in which a 120 licensed bed skilled nursing facility is operated by Brookside Health Care Rehabilitation Cen-

---

1. A revised form of Order was to have been submitted. However, as it had not as of the date of this writing, my Chambers confirmed with the Debtor's counsel that the Motion was not being withdrawn, but rather that certain business issues were being addressed and that had been the reason for not requesting the order. As it is the legal issues, not the business issues that will determine the outcome of this Motion, counsel was advised of my intention to render a decision rather than await a proposed order.

2. No evidence was presented. However, I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017.

*See Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1200 n. 3 (3d Cir.1991); *Levine v. Egidi*, 1993 WL 69146, at \*2 (N.D.Ill.1993); *In re Paolino*, 1991 WL 284107, at \*12 n. 19 (Bankr.E.D.Pa.1991); *see generally In re Indian Palms Associates, Ltd.*, 61 F.3d 197 (3d Cir.1995). Moreover, factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them. *Larson v. Groos Bank*, 204 B.R. 500, 502 (W.D.Tex.1996) (statements in schedules). *See also In re Musgrove*, 187 B.R. 808 (Bankr.N.D.Ga.1995) (same); *In re Leonard*, 151 B.R. 639 (Bankr.N.D.N.Y.1992) (same).

ter, Inc. Motion ¶¶ 3, 6. The operating report for this self-described single asset real estate case indicates that the Debtor received $25,000 per month in post-petition rent for the reporting period but all operating expenses were paid by the tenant.[3] It is not clear what use is being made of the rental income.

According to the Debtor's Schedules, the current market value of the real property is $2,300,000 against which there is a secured claim of $8,401,259 presently held by Greenleaf. The Debtor also owns office and medical equipment and fixtures valued at $200,000 which also secures its obligation to Greenleaf. At the time of the filing of the petition, the holder of the secured claim was the U.S. Department of Housing and Urban Affairs ("HUD") which assigned the note and mortgage to Greenleaf on April 16, 2004. Motion ¶ 7. There are no priority claims scheduled. The Debtor's Schedule F refers to a Schedule A attachment as providing the list of unsecured nonpriority claims. However, all that is supplied is a list of pending lawsuits but no Schedule A or statement of the total amount of unsecured debt.

Also relevant to this matter is the Unanimous Consent in Lieu of Meeting of Partners of Encore Healthcare Associates ("Unanimous Consent") which authorizes the filing of the Chapter 11 petition. As background it recites that the Debtor is insolvent, that it had been informed by HUD that it intends to commence foreclosure action on the Debtor's assets, that it was in its best interests to sell the assets of the Debtor, that it had entered an

agreement to do so, and that it needed the protection of the Bankruptcy Court to stay all creditor actions and assist in the consummation of the asset sale.

The Motion proposes to sell the Debtor's assets to Brookside Real Estate, L.L.C. ("Brookside") for $2,500,000 pursuant to an Asset Purchase Agreement dated as of July 8, 2003 (the "Agreement"). Given the date of the Agreement, presumably this is the sale agreement referenced in the Unanimous Consent. The proceeds of sale will be used to pay costs of sale and to partially pay the amounts owed to Greenleaf.[4] The Agreement requires the Debtor as seller to file a petition for relief under Chapter 11 and concomitantly to file a motion, in form and substance satisfactory to Brookside, seeking a procedures order and sale order, both in the form specified in the Agreement.

## DISCUSSION

As noted above, at the hearing on the Motion, the Court raised with the Debtor's counsel the propriety of a § 363 sale, the sole purpose of which was to liquidate assets for the benefit of the secured creditor. In response to my questioning, the Debtor acknowledges its intention to convert this Chapter 11 case to one under Chapter 7 following the approval of the sale. Thus, this sale is not in furtherance of a plan of reorganization or liquidation.

In *Committee of Equity Security Holders v. The Lionel Corporation (In re The Lionel Corp.),* 722 F.2d 1063 (2d Cir.1983), the Second Circuit Court of Appeals considered the propriety of sales pursuant to § 363 by Chapter 11 debtors outside of a

---

3. Curiously, the Schedules indicate no rent was received in 2003 but $1,018,865 was received in 2002. How this relates to the present $25,000 is unclear. Counsel's Rule 2016(a) Statement indicates that his fees and expenses will be paid by Wellness Concepts, Inc., a corporation that has common owner-

ship with the Debtor. He received a $10,000 retainer from that entity.

4. The Agreement provides for a $250,000 hold back to be escrowed to provide the buyer with a source of payment for Damages as defined in the Agreement.

plan. In that case, the debtor sought to sell its most valuable asset, 82% of the common stock of a non-debtor affiliate, pursuant to § 363(b). The debtor contended that the sale of this non-productive asset would generate cash to fund the plan of reorganization. Indeed a plan of reorganization was filed four days after the sale motion was lodged. The sale was favored by the Official Committee of Unsecured Creditors but the order approving the sale was subsequently appealed by the Committee of Equity Security Holders.

█ While the facts of *Lionel* are different than the facts before me in this case, the Court's discussion on the use of § 363 to sell assets in Chapter 11 is instructive as it refutes the Debtor's assertion that § 363 confers a right and power to a debtor-in possession to sell assets outside the ordinary course free and clear of any interest in such property so long as the interest holder consents. In *Lionel*, the Court rejected the notion that § 363(b) grants the bankruptcy judge *carte blanche* to approve a sale outside a plan of reorganization. *Id.* at 1069. Rather it concluded that there must be some business justification, other than appeasement of major creditors before the bankruptcy judge may order such disposition under § 363(b). *Id.* at 1070. The debtor applying under § 363(b) must demonstrate that a sale will aid the debtor's reorganization. *Id.* at 1071. Since the sole justification was that the sale was urged by the Creditors' Com-

mittee, the Court concluded there was no business reason and reversed the order approving the sale.[5]

While disclaiming any need to justify its use of the bankruptcy forum to sell its assets under § 363(b), Debtor does proffer an explanation for its filing. Debtor's counsel contends that it was unable to sell its assets outside of bankruptcy because HUD would not consent nor would it take any action to foreclose. Thus, there was an impasse that the Debtor believed could only be remedied by resorting to bankruptcy. Assuming that explanation to be true,[6] it hardly provides an explanation as to why the bankruptcy sale is needed now. HUD sold its mortgage to Greenleaf last April. Once that occurred, there was no impediment to a dismissal of this case which admittedly has no other purpose than to sell the assets to Brookside, pay the proceeds less expenses to Greenleaf and convert this Chapter 11 case to a case under Chapter 7. Rather it appears that the bankruptcy sale is a requirement of Brookside who reached agreement with the Debtor pre-petition and imposed as a condition of sale the requirement that the Debtor secure bankruptcy orders in the form it approved. While this Court understands Brookside's interest in acquiring the assets along with a bankruptcy order insulating it from future claims and providing a federal forum to litigate any contract issues,[7] I am hard pressed to see why the

---

5. In a case decided under the 1898 Bankruptcy Act, the Third Circuit Court of Appeals had held that a preconfirmation sale could be authorized only upon a showing of an emergency. *In re Solar Mfg. Corp.*, 176 F.2d 493 (3d Cir.1949). That Court's subsequent ruling in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir.1986), approving of a pre-confirmation sale without reference to *Solar* has led courts in this circuit to conclude that the "sound business purpose" test has supplanted the "emergency" rule. *In re Delaware & Hudson Railway Co.*, 124 B.R. 169,

176 (D.Del.1991) (*citing In re Indus. Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15, 20 (Bankr.E.D.Pa.1987)).

6. No testimony was taken, and it conflicts with the Unanimous Consent which states that HUD was foreclosing on the assets.

7. The proposed order annexed to the Agreement as the required document to be secured is nine pages long and contains such findings as (1) the sale must be completed immediately in order to preserve the Debtor's going con-

bankruptcy court should assume jurisdiction over this sale.

While I afforded Debtor the opportunity to convince me otherwise, its legal memorandum filed fails to cite any cases that advance its cause. Two of the cases deal with the right of a debtor-in-possession to commence a preference action when the proceeds of the action will only benefit the secured creditor. *Mellon Bank, N.A. v. Dick Corp.*, 351 F.3d 290 (7th Cir.2003); *Enserv Company Inc. v. Manpower, Inc. (In re Enserv Company, Inc.)*, 64 B.R. 519 (9th Cir. BAP 1986). I find no relationship between preference litigation and asset sales for a number of reasons. First, the inability to commence a preference suit in the bankruptcy court would result in forfeiture of the asset and subvert the policy underpinnings of the preference statute, *i.e.*, to discourage the race to dismantle a debtor in financial trouble and to treat similarly situated creditors equally. These policies were very much in the mind of the appellate courts that concluded that the debtor should be permitted to bring these actions notwithstanding that they conferred no benefit on the estate generally. *Mellon Bank*, 351

F.3d at 293;[8] *Enserv*, 64 B.R. at 520. The asset sale can easily be accomplished outside of bankruptcy either with the consent of the secured creditor or by abandoning the asset to the secured creditor to sell on its own. The final case cited by Debtor is *Behm v. Bell*, 80 B.R. 104 (M.D.Tenn.1987). This case holds that a Chapter 7 trustee may sell both the estate's interest and the non-debtor's interest in certain real estate under § 363(h). The Court rejected the appellant's contention that the sale was improper because it inured only to the benefit of the secured creditor, finding that the secured creditor would not be the sole beneficiary of the proposed sale which would realize proceeds to pay administrative expenses and make a distribution to holders of priority claims. In any event, a sale by a Chapter 7 trustee that is charged with the liquidation of estate assets presents a different scenario than a sale by a debtor-in-possession under Chapter 11.[9]

While Debtor's research did not unearth any cases on point, my own is to the contrary. In *In re Fremont Battery Co.*, 73 B.R. 277 (Bankr.N.D.Ohio 1987), the

---

cern value and as a result, good and sufficient business justification exists for the immediate sale; (2) the transfer of the assets will not subject the buyer to "any liability for claims against the Debtor or any of the Debtor's predecessors or affiliates of any kind or character...." One would conclude from (1) above that the parties are aware of the limitation on § 363 as articulated in *Lionel*. Paragraph 5 of the Order provides (for over more than half a page) the interest is sold. Paragraph 6 enjoins all persons from pursuing claims against the buyer to recover on claims against the Debtor, its estate, its principals, etc. Paragraph 8 directs all governmental agencies to accept any documents necessary to consummate the sale, and paragraph 10 requires all entities who are in possession of the assets to surrender possession of them to the buyer. Finally, the Court is to retain jurisdiction to enforce and implement the

Agreement, compel delivery of the assets to the buyer, resolve any disputes arising under or related to the Agreement and enforce, implement and interpret the Sale Order.

8. *Mellon* is also distinguishable because the secured creditor had advanced post-petition funds at a time when the Debtor still operated and had unsecured creditors and in consideration was provided with a lien on the preference recoveries as protection. The sale had generated funds that allowed a bonus of $7.5 million to unsecured creditors.

9. Indeed the Debtor recognized that in this district the United States trustee's procedures for panel Chapter 7 trustees precludes the administration of assets for the benefit of a secured creditor. In such case, the assets are abandoned, and the lienholder is free to exercise its state law remedies.

court applied the *Lionel* business judgment test and concluded that there was no justification for the proposed § 363 sale of all the debtor's assets. The court reasoned as follows:

> The proposed sale would not, as a whole benefit the Debtor or creditors. In fact, if allowed, the sale would terminate Debtor's existence. If Debtor's proposed sale were authorized, the likelihood of reorganization would dissipate as there would remain no assets from which a plan could be proposed. Additionally, the proceeds from the proposed sale would, at most, benefit one creditor only. The sale would not create proceeds that would inure to the benefit of the unsecured creditors.

*Id.* at 279.[10]

The pre-confirmation sale of assets in Chapter 11 cases is often an important step in furtherance of a reorganization proceeding. Such is not the case here. Notably where such sales have been approved, the facts are very different. For example, in *In re Medical Software Solutions*, 286 B.R. 431 (Bankr.D.Utah 2002), the court found a sound business reason for sale outside the ordinary course of business and outside a plan based on the lack of funds to continue operating and the narrow window for sale before the assets significantly declined in value. Notably the sale to the lenders for the cancellation of pre and post-petition debt also ensured the payment of administrative claims and established a $100,000 fund for unsecured creditors. *In re Channel One Communications, Inc.*, 117 B.R. 493 (Bankr.E.D.Mo. 1990) represents another factual circumstance where a Chapter 11 § 363 sale is appropriate. In that case, the debtor was securing post-petition loans to fund operating losses and needed to sell the assets quickly as a going concern to maximize value for the estate. The cash consideration for the assets was in excess of all liens and encumbrances. Here the proposed sale not only generates funds solely for the secured creditor which could realize the value of its collateral by foreclosing and selling the assets itself but more significantly advances no purpose of a Chapter 11 proceeding. There is no operating business with employees that is preserved by reason of this sale as the Debtor does not operate a business but merely leases real property. *Compare In re Rausch Manufacturing Co., Inc.*, 59 B.R. 501, 503 (Bankr.D.Minn.1985) (approving a sale because rather than result in the demise of a debtor/corporation, it allowed the continuation of a viable company employing people and producing product for a worldwide market). Indeed the Debtor intends to convert to a case under Chapter 7 after the sale is consummated.

■ Finding no business justification for the proposed § 363 sale in a Chapter 11 proceeding, the Motion is denied. While I recognize that at this junction the

---

10. The Court reiterated that GGEC was the only creditor which would benefit from the proposed sale. "No funds would remain, after the proposed sale, that would benefit other creditors or that would provide funds from which a reorganization." *Id.* Notably this case was decided some time ago and the view that a liquidation of assets is not a proper use of Chapter 11 proceedings is no longer held. *E.g., In re After Six, Inc.*, 154 B.R. 876, 881 (Bankr.E.D.Pa.1993). Indeed Chapter 11 bankruptcy proceedings are frequently utilized to liquidate assets. However, there are limits to the use of § 363, and it is clear that Chapter 11 liquidations are still subject to the proscriptions of Chapter 11 concerning, *inter alia*, the filing of a plan. Recognizing as much, most secured creditors understand the necessity of making some distribution available to other creditors as the price of a court-approved sale. An asset sale under the facts presented to me goes beyond the most liberal interpretation of *Lionel*.

Debtor has only requested that I approve the sale procedures and not the sale which would be conducted pursuant to those procedures, since I will not approve a sale under any procedures, it would be improper to authorize this first step. An Order consistent with this Memorandum Opinion shall issue.

### ORDER

**AND NOW,** this 18th day of June 2004 upon consideration of the Motion for an Order under 11 U.S.C. §§ 105(a), 363 and Fed.Bankr.R. 2002, 6004, 6008 and 9014(A) Approving Auction and Notice Procedures, (B) Authorizing the Sale of Substantially All of Debtor's Assets Free and Clear of Liens, Claims and Encumbrances and (C) Granting Related Relief (the "Motion"), after notice and hearing and for the reasons stated in the accompanying Opinion;

It is hereby **ORDERED** that the Motion is **DENIED.**